UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN K. MUELLER,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No.  2: 15-cv-01479 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI")[1] and Disability Insurance Benefits ("DIB")[2] under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381-1383f.  For the reasons that follow, plaintiff's motion for summary judgment will be granted and defendant's cross-motion for summary judgment will be denied.

---

[1] SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) (Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels).

[2] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

1

1   PROCEDURAL BACKGROUND

2   Plaintiff initially applied for Disability Insurance Benefits ("DIB") and Supplemental

3   Security income ("SSI") on March 8, 2011, alleging her disability began March 15, 2005.

4   Administrative Record ("AR")[3] at 13 (ECF No. 7-3 at 14) (Decision).  The claim was denied

5   initially on January 5, 2012, and on reconsideration on August 15, 2012.  Id.  Plaintiff then

6   requested a hearing, and a hearing was held on August 1, 2013 before Administrative Law Judge

7   ("ALJ") Carol A. Eckersen.  AR 22 (ECF No. 7-3 at 23).  The hearing was attended by plaintiff,

8   her attorney Richard A. Shore, and Vocational expert Bonnie Drumwright.

9   On October 28, 2013, ALJ Eckersen found plaintiff "not disabled" within the meaning of

10  the Social Security Act from March 15, 2005, her claimed disability date, through December 31,

11  2010, her date last insured.  AR 13 (ECF 7-3 at 14).  Plaintiff requested review of that decision by

12  the Appeals Council, AR 7 (ECF No. 7-3 at 8), which request was denied on May 15, 2015.  AR

13  1-5 (ECF No. 7-3 at 2-6).  Plaintiff filed her Complaint in this court on July 10, 2015.  ECF No.

14  1.  The parties have consented to the jurisdiction of the Magistrate Judge.  ECF Nos. 12 (plaintiff)

15  and 4 (defendant).  The parties' cross-motions for summary judgment, based upon the

16  Administrative Record filed by the Commissioner, have been fully briefed.  ECF No. 10

17  (plaintiff's motion for summary judgment), ECF No. 11 (Commissioner's cross-motion for

18  summary judgment).

19  FACTUAL BACKGROUND

20  Plaintiff was born August 8, 1954 and thus was 56 years old, which is defined as "closely

21  approaching advanced age," on the date last insured.  AR 21 (ECF 7-3 at 22).  She changed age

22  category to advanced age thereafter.  Id.  She has at least a high school education and can

23  communicate in English.  Id.

24  LEGAL STANDARDS

25  The Commissioner's decision that a plaintiff is not disabled will be upheld "if it is

26  supported by substantial evidence and if the Commissioner applied the correct legal standards."

---

[3] The Administrative Record, comprising 806 pages was filed in 13 (thirteen) segments and is found at ECF No. 7.

2

1   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "The findings of the

2   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  Andrews

3   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

4        Substantial evidence is "more than a mere scintilla, [but] may be less than a

5   preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Substantial evidence

6   "means such relevant evidence as a reasonable mind might accept as adequate to support a

7   conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

8   "While inferences from the record can constitute substantial evidence, only those 'reasonably

9   drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)

10  (citation omitted).  Although this court cannot substitute its discretion for that of the

11  Commissioner, the court nonetheless must review the record as a whole, "weighing both the

12  evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."

13  Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir 1988); Jones v. Heckler, 760 F.2d

14  993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that

15  detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of

16  supporting evidence.").

17       "The ALJ is responsible for determining credibility, resolving conflicts in medical

18  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

19  2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which

20  supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart, 278

21  F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ

22  in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn v.

23  Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)

24  ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that

25  the ALJ did not discuss").

26       The court will not reverse the Commissioner's decision if it is based on harmless error,

27  which exists only when it is "clear from the record that an 'ALJ's error was inconsequential to the

28  ultimate nondisability determination.'"  Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2005)

1  (quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-1056 (9th Cir. 2006)); <u>see also</u> <u>Burch v.</u>
2  <u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

3                                                   RELEVANT LAW

4     Disability Insurance Benefits and Supplemental Security Income are available for every
5  eligible individual who is "disabled." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The
6  Commissioner uses a five-step sequential evaluation process to determine whether an applicant is
7  disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); <u>Barnhart v.</u>
8  <u>Thomas</u>, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to
9  determine disability" under Title II and Title XVI).  The following summarizes the sequential
10 evaluation.

> Step one: Is the plaintiff engaging in substantial gainful activity?
> If so, the plaintiff is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b)

> Step two: Does the plaintiff have a "severe" impairment? If so,
> proceed to step three. If not, the plaintiff is not disabled.

<u>Id.</u>. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the plaintiff's impairment or combination of
> impairments meet or equal an impairment listed in 20 C.F.R. Pt.
> 404, Subpt. P, App.1? If so, plaintiff is disabled. If not, proceed to
> step four.

<u>Id.</u> §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the plaintiff's residual functional capacity make
> him capable of performing his past work? If so, the plaintiff is not
> disabled. If not, proceed to step five.

<u>Id.</u> §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the plaintiff have the residual functional capacity to
> perform any other work? If so, the plaintiff is not disabled. If not,
> the plaintiff is disabled.

<u>Id.</u> §§ 404.1520(a)(4)(v), (g).

   The plaintiff bears the burden of proof in the first four steps of the sequential evaluation
process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or
disabled"), 20 C.F.R. § 416.912(a) (same).  However, "[a]t the fifth step of the sequential

                                                           4

analysis, the burden shifts to the Commissioner to demonstrate that the plaintiff is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012).

## THE ALJ's FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2. [Step 1]  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 15, 2005 through her date last ensured of  December  31, 2010 (20 CFR 404.1571 *et seq.*).  […]

3. [Step 2]  Through the date last insured, the claimant had the following severe impairments:  cervical spine degenerative disc disease, mild bilateral carpal tunnel syndrome and degenerative joint disease, left hip trochanteric bursitis and lumbar degenerative dis disease.  (20 CFR 404.1520(c)).  […]

4. [Step 3, continued] Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the list impairments in 20 CFR Part 404, Subpart P, Appendix I.  20 CFR 404.1520(d), 404.1525, and 404.1526).  […]

5. [Preparation for Step 4]  After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps or stairs but no ladders, ropes or scaffolds, frequently balance or stoop, occasionally kneel or crouch, but cannot crawl.  She can frequently reach overhead with the bilateral upper extremities but should avoid concentrated exposure to vibration and moderate exposure to hazards.  […]

6. [Step 4]  Through the date last insured, the plaintiff was unable to perform any past relevant work (20 CFR 404.1565).

7. [Step 5]  The claimant was born on August 8, 1954 and was 56 years old, which is defined as an individual closely approaching advanced age, on the date last insured.  The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

8. [Step 5, continued]  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

5

9. [Step 5, continued] The claimant has acquired work skills from past relevant work (20 CFR 404.1568). […]

10. [Step 5, continued] Considering the plaintiff's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 4004.1569(a) and 404.1568(d)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 15, 2005, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(g)).

AR 15-22 (ECF No. 7-3 at 16-23).

## ANALYSIS

Plaintiff argues that the ALJ erred by (1) failing to articulate legitimate reasons for rejecting the opinion of Dr. Ware, plaintiff's treating physician, and failing to discuss specific opinions from Dr. Ware regarding plaintiff's functional limitations; and (2) improperly failing to credit the testimony of plaintiff and plaintiff's husband regarding the severity of her pain and functional limitations.  ECR No. 10 at 4:5-11.

I. The ALJ's Consideration Of Medical Opinion Evidence

A. Evaluation of Medical Opinion Evidence

In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to a treating physician's opinion than to those who do not treat the claimant. Id.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and

6

1 legitimate reasons that are supported by substantial evidence." Id. The ALJ, however, "need not

2 accept the opinion of any physician, including a treating physician, if that opinion is brief,

3 conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of Soc. Sec.

4 Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

### B. The Medical Evidence Before the ALJ

#### 1. Treating Physician Dr. Ware

Dana S. Ware, M.D., was plaintiff's treating physician from 2005 through 2012.[4] Dr. Ware first saw plaintiff for back and arm pain, among other things, in February 2005. AR 763 (ECF No. 7-12 at 156). Dr. Ware confirmed degenerative spondylosis with narrowing disc spaces but no herniation through an MRI performed in April 2005, and cervical osteoarthritis with radiculopathie.[5] AR 757 (ECF No. 7-12 at 150). On May 18, 2005 she found plaintiff's neck tender to palpation from C2 to C7 bilaterally but worse on the left, reported that X-ray showed osteoarthritis type changes with narrowed disk spaces and some bone spurs at C4-5 and C5-6, and sought authorization for pain management evaluation with possible epidural steroids and physical therapy referral. AR 756 (ECF No. 7-12 at 149).

Over time Dr. Ware treated plaintiff's pain with Vicodin, id. (5/18/05); physical therapy, Flexeril and Ibuprofen, AR 751 (ECF No. 7-12 at 144) (5/1/06); Robaxin, SOMA, and Lexapro, AR 749 (ECF No. 7-12 at 142) (9/11/06). Ibuprofen was discontinued plaintiff reported pain, muscle spasms, headache, depression and insomnia. Id. On June 5, 2006, Dr. Ware noted that plaintiff was concerned about what work she was going to be able to do, since sitting at a desk and working on the computer caused pain. AR 750 (ECF No. 7-12 at 143). On May 22, 2007 Dr. Ware ordered an MRI of spine and hip for low back pain radiating into buttocks. AR 742 (ECF No. 7-12 at 135). On June 18, 2007, after examination, plaintiff's medication regime was

////

---

[4] AR 710- 778 (ECF No. 7-12 at 103-171) (Hearing Exhibit 14F); see also AR 609-696 (ECF No. 7-12 at 2-89 (Hearing Exhibit 12F).
[5] The University of Maryland Spine Center describes a cervical radiculopathy as having symptoms including pain, numbness and weakness that radiate out from the neck and may be felt in the shoulder, arm or hand along with neck pain and occipital headaches. Umm.edu/programs/spine/health/guides/cervical radiculopathy.

7

changed to SOMA, Vicodin and Diclofenac in response to plaintiff's arm pain upon lateral spine rotation.

By June 8, 2008, plaintiff reached some stability on her medication, AR 732 (ECF No. 7-12 at 125), but on October 2, 2008 she reported that the insurance no longer covered the Robaxin and she was buying it for herself. AR 731 (ECF No. 7-12 at 124). During Dr. Ware's absence on leave, Dr. Christopher Ward, D.O., saw plaintiff twice. On January 2, 2009 he noted that plaintiff had discontinued Robaxin due to lost insurance coverage for that medication. She still took Diclofenac and Vicodin. Dr. Ward identified paracervical spasm and tenderness attributed to degenerative disk disease of t cervical spine, and again prescribed Robaxin for spasm and Vicodin. AR 729 (ECF No. 7-12 at 122).

On July 15, 2009, Dr. Ware prescribed a new medication, Ralafen, as pain was disturbing plaintiff's sleep. AR 726 (ECF No. 7-12 at 119). On August 6, 2009, plaintiff reported a new piercing, stabbing and fiery pain in the interior aspect of the left arm, radiating from the posterior shoulder to the left elbow, and more myofascial spasm than in the past. Dr. Ware continued her on alternating Robaxin and SOMA, Diclofenac, and an occasional Vicodin. AR 725 (ECF No. 7-12 at 118).

On October 21, 2010, plaintiff reported that she has been unable to work since she lost her job. Dr. Ware continued Nabumetene 500 mg as plaintiff has no adverse reaction. AR 723 (ECR 7-12 at 116). On March 9, 2011, Dr. Ware reported that an MRI performed in November showed no changes, and pain from shoulders through arms was not bilateral. AR 721 (ECF No. 7-12 at 114).

Dr. Ware had suggested that plaintiff lose some weight, and by August 18, 2011 she was down from over 250 lbs. to 184 lbs. which helped the neck a little, but arms were still a problem. Although plaintiff reported she could perform daily living activities, she was unable to hold her camera to try to build a photography business, and could not sit at a desk and do computer work. AR 720 (ECF No. 7-12 at 113). Dr. Ware noted that plaintiff's intention to pursue SSI disability was "a reasonable plan" in her view, as plaintiff "has tried everything she can to continue to work." Id.

8

In a progress note dated January 23, 2012, Dr. Ware noted that plaintiff's pain persisted despite plaintiff having lost weight and making "every effort to improve her physical situation." AR 719 (ECF No. 7-12 at 112). Dr. Ware reaffirmed the diagnosis of cervical degenerative disc disease, which had been confirmed by MRI findings. AR 718-719 (ECF No. 7-12 at 111-112). Plaintiff's pain was "steady most of the time, but it is also positional." Dr. Ware reported that plaintiff's neck and arm pain both increased when plaintiff's gaze was more than about 10 degrees below a level gaze. Neck pain was severe enough that plaintiff could not look down, such as at a keyboard or to wash dishes, for more than about 1 ½ minutes. Plaintiff could flex her cervical spine to about 30 degrees and extend to about 10 degrees; lateral rotation and motion were full, but painful. Dr. Ware also noted severe posterior bilateral arm pain, and inability to hold a heavy object (camera). AR 719 (ECF No. 7-12 at 112). Dr. Ware concluded that plaintiff's cervical degenerative disc disease rendered her "unable to work in almost anything that could cause her to have to move her head." AR 718 (ECF No. 7-12 at 111).

In a progress note dated June 2, 2012, Dr. Ware continued plaintiff's pain management regimen. AR 717 (ECF No. 7-12 at 110). She noted that plaintiff experienced persistent neck pain when she looked down for more than 10-15 minutes. Her hands also "went to sleep" at that time. Id.

### a. The ALJ's Assessment of the Evidence

The ALJ found that Dr. Ware's January 2012 comment about plaintiff's inability to "work in almost anything that could cause her to move her head," and statements in numerous off-work authorizations Dr. Ware had issued over the years,[6] "touch on subject matter reserved to the commissioner, and are therefore not accorded independent weight." AR 18-19 (ECF No. 7-3 at 19-20). The ALJ further found that "some of [Dr. Ware's] forms" are not persuasive of disability because they "do not set forth an assessment of the claimant's actual physical capabilities." AR 19 (ECF No. 7-3 at 20). She found Dr. Ware's assessments to be "overly restrictive" and "not consistent with the claimant's considerable activities of daily living." Id. She noted that Dr.

---

[6] These are contained in the worker's compensation file produced to the Commissioner, AR 327-437 (ECF No. 7-9) (Hearing Exhibit 4F).

Ware's assessments were based on plaintiff's subjective complaints," and found that "the medical evidence does not justify such restrictive limitations." Id.

### 2. Examining Physician Dr. Saleh

Dr. Jamshid Saleh examined plaintiff in 2006, in the workers' compensation context. He found no clinical evidence of radiculopathy, and found possible facet generated pain associated with muscle spasm. AR 345-347 (ECF No. 7-9 at 20-22). The ALJ noted that Dr. Saleh had provided no function by function analysis, but nonetheless gave this opinion "moderate weight." AR 19 (ECF No. 7-3 at 20).

### 3. Non-Examining Agency Physicians

The ALJ received medical source statements from two reviewing consultants, Dr. G. Williams and Dr. L. DeSouza, neither of whom examined the plaintiff. On December 14, 2011, Dr. Williams concluded that plaintiff could lift or carry 10 pounds both occasionally and frequently; stand and/or walk for 4 hours; sit for 6 hours in an 8 hour workday; occasionally push/pull with upper extremities; occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; frequently balance and stoop; occasionally kneel and crouch; never crawl; frequently reach overhead; must avoid concentrated exposure to extreme cold and vibration; and avoid even moderate exposure to hazards such as machinery and heights. AR 94-96 (ECF No. 7-4 at 10-1). On August 15, 2012, Dr. DeSouza concurred with this assessment. AR 120-121 (ECF No. 7-4 at 36-37).

The ALJ gave these assessments "substantial weight" because they were consistent with the evidence in the record. AR 18 (ECF No. 7-3 at 19).

### C. Discussion

Because the ALJ did not clearly articulate which of Dr. Ware's opinions she was rejecting (most of Dr. Ware's records are not mentioned or discussed), it is difficult to determine whether the standard for contradicted or uncontradicted opinions should apply.[7] However, it is clear that

---

[7] Dr. Saleh gave a conflicting opinion as to radiculopathy, but the ALJ did not discuss radiculopathy. The ALJ did not identify anything in the reports of the non-examining doctors, which she granted significant weight, regarding the most important issues Dr. Ware addressed: plaintiff's pain level and inability to do things that required any head movement.

1  the ALJ discounted Dr. Ware's finding that plaintiff could not move her head without significant
2  neck and arm pain, look down for more than twenty minutes at a time, hold her head in a flexed
3  position for more than a total of two hours a day, or perform any job that required head
4  movement. The ALJ's reasons for discounting Dr. Ware's opinions on these matters are neither
5  clear and convincing nor specific and legitimate, and are not supported by substantial evidence,
6  for the reasons that follow.

7  Dr. Ware did indeed, as the ALJ indicated and the Commissioner argues, make certain
8  statements that constitute conclusions on the ultimate question of disability, which is reserved to
9  the Commissioner. See e.g. AR 723 ("[plaintiff] has been unable to work since she lost her job…
10 doing telephone and computer work for many years. *She would be unable to do that kind of a*
11 *desk job again. . .*"); AR 718 ("Cervical degenerative disk disease, really unable to work in
12 almost anything that could cause her to have to move her head. *I can't think of any job where she*
13 *wouldn't have to look down at certain points during the day*.") (emphases added). It is the ALJ,
14 not the doctor, who must determine whether a claimant's residual functional capacity is consistent
15 with jobs that are available in the economy. However, the ALJ was not free to summarily
16 disregard the medical findings on which Dr. Ware based her comments, including findings about
17 the severity of plaintiff's pain and its effect on her functioning.

18 To the contrary, the governing Social Security Regulation ("SSR")[8] provides in relevant
19 part as follows:

> Adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

24 SSR 96-5p. Here, although the ALJ stated that she had "considered" Dr. Ware's statements, she
25 rejected them without recontacting Dr. Ware for further information about plaintiff's cervical

---

[8] "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." Bray, 554 F.3d at 1224. The Ninth Circuit gives them deference so long as they do not produce "a result inconsistent with the statute and regulations." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

1  spine restrictions and the effects of pain on plaintiff's ability to sustain work-related tasks.  The
2  ALJ commented that "some of" the forms completed by Dr. Ware failed to provide specific
3  assessments of plaintiff's "actual physical capabilities," which indicates that the basis for Dr.
4  Ware's opinions was not clear to the ALJ.  In that case, SSR 96-5p requires recontacting the
5  doctor rather than rejecting her opinions.

6  As further basis for rejecting Dr. Ware's assessments, the ALJ stated that they were
7  inconsistent with plaintiff's activities of daily living, specifically plaintiff's ability to prepare
8  meals, drive a car, and go shopping.  As discussed more fully below regarding the ALJ's
9  evaluation of plaintiff's testimony, the ability to perform these tasks – particularly to the limited
10 extent that plaintiff did so – is not inconsistent with the severity of symptoms reported by Dr.
11 Ware.

12 The ALJ also rejected Dr. Ware's assessments because they were allegedly based on
13 plaintiff's subjective complaints rather than objective evidence.  A doctor may, indeed must, rely
14 in part on a patient's subjective reports of pain.  Pain is a subjective phenomenon, see 20 C.F.R. §
15 404.1529(c)(3), and the ALJ may not require objective evidence for a symptom that eludes
16 measurement, Benecke v. Barnhart, 335 F.3d 587, 594 (9th Cir. 2004).  Given Dr. Ware's seven
17 year history of treating plaintiff and attempting to medically manage her pain, she was in the best
18 position to assess the credibility of those subjective reports and their consistency with the medical
19 evidence.  See Ryan, 528 F.3d at 1199-200 ("an ALJ does not provide clear and convincing
20 reasons for rejecting an examining physician's opinion by questioning the credibility of the
21 patient's complaints where the doctor does not discredit those complaints and supports his
22 ultimate opinion with his own observations").  Furthermore, Dr. Ware's treatment notes
23 document objective evidence including MRI results that are consistent with plaintiff's subjective
24 reports.[9]  Finally, Dr. Williams, whose review of the medical records the ALJ granted "substantial
25 weight," specifically found that found that plaintiff's statements about the intensity, persistence

---

26  [9] Even if Dr. Ware had relied exclusively on plaintiff's subjective complaints, her opinion could
27  not be disregarded on that ground unless the subjective complaints themselves have been refuted.
    See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  As the court discusses separately
28  below, the ALJ's rejection of plaintiff's subjective reports was based on legal error.

12

1  and functionally limiting effects of the symptoms were substantiated by the objective medical

2  evidence.  AR 107 (ECF No. 7-1 at 23).[10]

3  Finally, the ALJ states that the medical evidence does not support the restrictive

4  limitations Dr. Ware found.  The only medical evidence she cites in this context, however, is the

5  observation of full range of cervical spine motion on June 28, 2012.  This is not substantial

6  evidence supporting the ALJ's conclusion.  First, cherry-picking a single incidence of

7  improvement out of a long history of waxing and waning symptoms does not meet the substantial

8  evidence test.[11]  Second, plaintiff continued to report significant pain on June 28, 2012, and pain

9  rather than range of motion is the primary issue here.

10  For all these reasons, the ALJ erred in consideration of Dr. Ware's assessments.

11  If the error was limited to rejection of Dr. Ware's finding that plaintiff could only bend

12  her neck for 20 minutes at a time, for a total of two hours our of an eight hour day, the error could

13  be deemed harmless.  At the hearing, plaintiff's counsel asked the vocational expert ("VE") a

14  hypothetical question incorporating that restriction, and the VE testified that a person with that

15  restriction would still be able to perform at least one identified job.  AR 84 (ECF No. 7-3 at 85).

16  However, the VE also testified that if the person required a break every 20 minutes from sitting,

17  to walk around for 10 minutes, she could not work.  Id.  And the VE was not asked a hypothetical

18  otherwise incorporating Dr. Ware's pain findings.  For these reasons, the error cannot be deemed

19  harmless.  Moreover, the ALJ's error regarding Dr. Ware's opinions is intertwined with her

20  assessment of plaintiff's credibility regarding the severity of her pain.  The court now turns to that

21  issue.

22  ////

23  ////

---

[10] Dr. Williams also found that plaintiff's reports were credible overall, and noted that her "allegations [are] documented by longitudinal evidence and MRI's and the need for long term use of narcotic analgesics."  AR 106 (ECF No. 7-4 at 22).

[11] In determining whether a claimant is disabled, the Commissioner must evaluate the claimant's "ability to work on a sustained basis."  20 C.F.R. § 404.1512(a).  "Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."  Lester, 81 F.3d at 833.

II. The ALJ's Credibility Determinations[12]

    A. The Testimony[13]

Plaintiff testified that her wrist pain begun in 2005 and had increased since that time. She was frequently unable to lift and hold objects such as a pan and her camera. Although she was physically able to drive, she avoided doing so because her fingers go numb and she experiences sharp wrist pain when she drives. She was experiencing increasing difficulty taking care of personal hygiene and washing her hair because of wrist pain.

Plaintiff testified that her neck pain caused her to try to hold her neck straight and stationary at all times. She would sometimes have periods of a week or two in which she felt able to engage in photography, but this activity would result in worse pain and she would be unable to use her camera again for extended periods of time. Moving her neck caused arm, hand and back pain as well as neck pain.

Hip and back pain had at points in the past prevented her from walking. She was currently using a walker to get out of bed and begin to move around in the mornings. Wrist pain made using the walker difficult.

Plaintiff recounted her history of medication for pain, and reported that she was currently taking Vicodin. Dosage varied according to her pain level. Pain was constant, but fluctuated in intensity. Her sleep was regularly interrupted by pain.

Plaintiff explained that she was able to perform some household tasks occasionally or to a limited degree, but could not do others (such as laundry and bed-making) at all due to wrist pain. Swelling of the wrists and fingers interfered with computer use.

She testified that sitting for an hour was difficult and required frequent changes of position. When she attended church for an hour, she needed to stand due to back pain. She could

////

---

[12] Plaintiff also challenges the ALJ's rejection, on credibility grounds, of statements from plaintiff's husband regarding her functioning. Because the case must be remanded for the reasons explained herein, the court does not reach this issue. On remand, however, the ALJ should reconsider the third party report in light of the discussion that follows.

[13] AR 34-80 (ECF No. 7-3 at 35-81).

sit for about 20 minutes, then would need to get up for 10 minutes.  She could not stand in a fixed position, but could walk for up to 20 minutes.

On approximately three "good days" a month, plaintiff could spend up to 20 minutes at a time on the computer editing photographs.  On at least 20 "bad days" a month, she could perform no tasks related to her photography business (taking photographs or working on the computer).  An "average" day was characterized by pain and minimal activity around the house.  The pain was sufficiently severe to prevent her from leaving the house eight or nine times a month.

### B.  The ALJ's Findings

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence and limiting effects of those symptoms was not entirely credible.  AR 19 (ECF No. 7-3 at 20).  More specifically, the ALJ found that plaintiff's statements about the effects of her impairments on her ability to work "were not entirely credible based on evidence of her activities of daily living."  AR 20 (ECF No. 7-3 at 21).[14]  The ALJ also discounted plaintiff's statements in light of (unspecified) "discrepancies" with the medical evidence.  Id.

### C.  Discussion

Having found objective medical evidence of impairments that could reasonably be expected to produce the reported pain, the ALJ could only reject plaintiff's testimony about the severity and limiting effect of that pain for clear and convincing reasons.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); see also Robbins v. Social Security Administration, 477 F.3d 880 (9th Cir. 2005).  That standard is not met here.

The ALJ found plaintiff's testimony inconsistent with her ability to perform the following activities of daily living: meal preparation, dishwashing, driving, shopping, managing finances, watching television, visiting friends, attending church, dusting every two weeks, working as a photographer after the alleged onset date, and caring for her husband after he had an accident in 2006.  AR 19 (ECF No. 7-3 at 20).  The ALJ also relied on two trips out of state that plaintiff

---

[14] The ALJ also found plaintiff's testimonial demeanor "generally unpersuasive," but specified that this observation was not determinative.  Id.

took, which suggested to the ALJ "that the alleged symptoms and limitations may have been overstated." AR 20 (ECF No. 7-3 at 21).

First, reliance on limited daily activities to discredit a claimant's testimony has been consistently found insufficient to support a denial of benefits. In Reddick Chater, 157 F.3d 715, 722 (9th Cir. 1998), the Ninth Circuit pointed out that no claimant should be penalized for attempting to maintain some sense of normalcy. See also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("many home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication).

Moreover, the ALJ ignores the evidence that plaintiff's specified activities of daily living are regularly and significantly limited by pain. Her meal preparation involves cooking twice a week, although she can also make sandwiches. AR 57-58 (ECF No. 7-3 at 59). She washes dishes but not daily. AR 58 (ECF No. 7-3 at 59). She can drive, but only drive short distances because driving causes wrist pain and numbness to her arms. AR 36-37 (ECF No. 7-3 at 37-38). She shops twice a month and usually requires assistance. AR 59-60 (ECF 7-3 at 60-61). Neither the ability to manage finances nor watching television is inconsistent with plaintiff's reports of pain. Her attendance at church and prayer meetings is characterized the inability to sit still through the hour because of pain. AR 50-61 (ECF 7-3 at 61-62). Her ability to take pictures and to work intermittently as a photographer has by all accounts been inconsistent at best, and is frequently precluded by pain. See Lingenfelter v. Astrue, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, failed, that he did not then experience pain and limitations severe enough to preclude him from maintaining substantial gainful employment. Indeed, we have suggested that similar evidence that a claimant tried to work and failed actually supported his allegations of disabling pain.") (emphases in text).

The ALJ notes, correctly, that "vacations and disability are not necessarily mutually exclusive," but goes on to reason that plaintiff's trips to Oregon and Arkansas were inconsistent

with the alleged severity of her pain. AR 20 (ECF No. 7-3 at 21). That conclusion is not supported by the evidence. The Oregon visit was a road trip with friends, who had to take regular breaks during the 6 hour drive because plaintiff could not sit for very long. Plaintiff testified that it took a week and a half for her to recover from that trip. AR 63-65 (ECF No. 7-3 at 64-66). She flew to Arkansas for her mother-in-law's 95th birthday, and needed to get up and move around on the plane during the flight. AR 65-66 (ECF No.7-3 at 66-67). The ALJ pointed to no evidence of specific activities during the visit that would be inconsistent with plaintiff's reports of pain.

The ALJ also asserted, without specific citation to the medical record, that plaintiff's statements about her impairments and their impact on her ability to work were inconsistent with "the reports of the treating and examining practitioners." AR 20 (ECF No. 7-3 at 21). The only treating physician here is Dr. Wade. As previously discussed, the ALJ rejected Dr. Wade's opinion as unduly relying on and adopting plaintiff' subjective reports. The reports of plaintiff and her treating physician cannot have been both so unreliably consistent as to discredit the doctor, and so discrepant as to discredit plaintiff. Moreover, according to Dr. Williams (whose report the ALJ found worthy of substantial weight), plaintiff's reports of pain are in fact consistent with the longitudinal medical evidence, including MRIs and a long history of treatment with narcotic analgesics. See AR 106 (ECF No. 7-4 at 22).

In sum, the ALJ's reasons for rejecting plaintiff's testimony about the severity and limiting effects of her pain are not clear and convincing. Accordingly, the matter will be remanded to the Commissioner for further proceedings.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 11), is DENIED;

3. This matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this decision; and

////

Case 2:15-cv-01479-AC   Document 13   Filed 09/30/16   Page 18 of 18

1      4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

2  DATED: September 29, 2016

_[signature]_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

18